(C.D. 4285)

COSMOS SHIPPING COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 18, 1971)

*Gurson L. Schweller* for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Urban S. Mulvehill,* trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of commercial size tubes of T-Lak toothpaste which were manufactured in and exported from France, and entered and classified in liquidation under TSUS item 461.40 at the duty rate of 13 per centum ad valorem. It is claimed in the protest that the merchandise should be classified free of duty under TSUS item 860.30.

The competing tariff provisions read as follows:

[classified under]

Cosmetics and other toilet preparations:

461.40      Not containing alcohol_____      13% ad val.

[claimed under]

860.30     Any sample . . . valued not over $1
each . . . to be used in the United
States only for soliciting orders for
products of foreign countries_____       Free

The question before the court in this case is whether the subject merchandise constitutes a "sample" within the meaning of item 860.30.

The evidence shows that the toothpaste was purchased and acquired abroad by the ultimate consignee, Pan Am Cosmetics Company of Brooklyn, N.Y., from the French manufacturer, Laboratoires Caze, for whom Pan Am is the sole United States distributor, at less than normal cost [the manufacturer sustained a production loss of $1\frac{1}{2}$¢ per unit] under a written contract between the manufacturer, distributor, and the World of Beauty Club based in Detroit, Michigan, pursuant to which some 320,000 units of T-Lak toothpaste were sold by the manufacturer to the distributor who in turn resold the product (at a minute profit) to the World of Beauty Club. And pursuant to the contract the Club put the toothpaste together with about seven other cosmetics in a kit which it distributed and offered for sale to club members (then numbering something in the order of 300,000) at a price substantially less than the aggregate retail prices of the cosmetics contained in the kit.

The record shows that the object of this tripartite venture was to increase the volume of product sales at the retail counter where the distributor sold the toothpaste to retailers at a unit price of $1.20. This object was achieved, according to the evidence, by making good quality, new and unusual cosmetics available to the organized women's consumer group comprising the World of Beauty Club at a modest price with the aid of promotional literature furnished in the kits, with a view toward stimulating consumer interest in repurchasing the cosmetics at the retail counter.

Witnesses called by plaintiff referred to and described the imported articles at bar as "samples". However, one consumer-witness agreed with a definition of the word "sample" read to her from Webster's Third New International Dictionary, unabridged, to the effect that a sample was "A trial package of a product, distributed without cost to potential customers."

The record shows that none of the involved merchandise was distributed free of charge at any level of the chain of distribution from manufacturer down to consumer. Pan Am paid 7 cents per unit plus cost and freight for the imported toothpaste against a production cost of $8\frac{1}{2}$ cents per unit, and sold it to the World of Beauty Club at a delivered Detroit price of 10 cents per unit. And the World of Beauty

Club distributed the kits every eight weeks at a price of $4.98 to members desiring to keep the kits. It was brought out in the testimony of two users of World of Beauty Kits that the price, while it was attractive, was not the main inducement influencing them to retain and pay for kits. These witnesses responded primarily because of the prospect offered them through the kits of being introduced to a variety of new and different cosmetics.

Although the involved importation consists of some 159,893 units of toothpaste valued at $11,192.51, from the standpoint of the claim made herein under item 860.30, we are talking only in terms of 59,893 units of toothpaste by reason of the fact, developed upon cross-examination of plaintiff's witness, that 100,000 of the imported units were returned upon importation to Pan Am's stocks (from which it supplied retailers) as per contract. The explanation given by the witness was that owing to labor strikes abroad the manufacturer was unable to meet the contract delivery schedule, and it, therefore, became necessary for Pan Am to advance 100,000 units of toothpaste against the contract from its current commercial stocks. Be that as it may, it is clear, as defendant correctly argues, that the 100,000 units imported with the intention of replacing Pan Am's stocks cannot qualify for duty-free entry under item 860.30 in any event since this toothpaste was obviously not imported for use in soliciting orders for products of foreign countries; and upon the record herein we so hold.

With respect then to the remaining 59,893 units of toothpaste in the instant importation, it is plaintiff's contention that this merchandise constitutes a "sample" within the meaning of item 860.30 because witnesses referred to them as such, and because this toothpaste was imported for the purpose of being used to solicit orders and not for sale. Plaintiff argues that the sales of record herein are only nominal sales, the real sales price being realized upon the reorders and the sales made by Pan Am to the retailers. Defendant contends that the subject merchandise is not a "sample" because it was sold and was not distributed free of charge in accordance with the common understanding of the word "sample", citing, among other things, the definition with which plaintiff's consumer-witness agreed [the 1963 edition of Webster's Third New International Dictionary].

Our attention is drawn to yet another definition contained in Webster's Third New International Dictionary (1957 edition) which defines a sample as:

> 2. A part of anything presented for inspection, or shown as evidence of the quality of the whole; a specimen; as, a *sample* of dress goods, of blood for analysis, or of one's workmanship.

This definition, and the one introduced at the trial as aforesaid, constitute in our opinion the relevant range of common understanding of

the word "sample" when that word is used as a noun. These definitions indicate, when applied to an article, that an article is given away, or it is exhibited for examination. In either case, there is nothing suggestive of a sale being involved with respect to the article. This comports pretty much with the court's own understanding of the word "sample" in ordinary usage. We, therefore, agree with defendant that the common meaning of the word "sample" precludes the notion of a sale. We view the instant transaction as constituting nothing other than the introductory sale of an ordinary commercial article at a reduced price with the expectation that profits will be realized upon future sales promoted thereby. As such, the instant transaction is outside the scope of item 860.30.

For the reasons stated the protest must be overruled.

Judgment will be entered herein accordingly.